IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01682-WJM-KLM

DONALD J. DODSON,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, COUNTY OF ARCHULETA, STATE OF COLORADO, and
RICK BELLIS, in his official capacity,

      Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion for Summary Judgment** [Docket No. 18; Filed October 19, 2011] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion was referred to this Court for recommendation [#19].  Plaintiff, who proceeds in this matter *pro se*, filed a Response [#27] to the Motion on November 29, 2011.  Defendants filed a Reply [#31] on December 27, 2011.  The Court has reviewed the Motion, the Response, the Reply, the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#18] be **GRANTED**.

## I.  Summary of the Case

      Plaintiff filed this lawsuit on June 28, 2011 and filed an Amended Complaint on July 15, 2011.  *See Compl.* [#1]; *Am. Compl.* [#4].  He asserts three claims: (1) violation of the

Age Discrimination in Employment Act ("ADEA") for age discrimination and retaliation[1] against his former supervisor Defendant Rick Bellis ("Bellis") and Defendant Board of County Commissioners, County of Archuleta, State of Colorado ("BOCC"); (2) a state law claim for violation of the procedures outlined in the Archuleta County Personnel Policy Manual (the "Manual") against both Defendants; and (3) deprivations of his First Amendment right to free speech and Fourteenth Amendment liberty interest pursuant to 28 U.S.C. § 1983 against Defendant Bellis only. *See Am. Compl.* [#4] at 6-9; *Motion* [#18] at 2; *Response* [#27] at 2.

On July 14, 2003, Plaintiff began working for Defendant BOCC in the Archuleta County Building Department. *See Motion* [#18] at 3; *Response* [#27] at 2. The parties agree that Plaintiff's employment with Defendant BOCC was at-will. *See Motion* [#18] at 2; *Response* [#27] at 1. In July 2008, Defendant Bellis became Plaintiff's supervisor. *See Motion* [#18] at 3; *Response* [#27] at 2. Plaintiff asserts that Defendant Bellis retaliated against him "for speaking out on [two] matters of public concern" during his employment.[2] *Am. Compl.* [#4] at 9; *Motion* [#18] at 2; *Response* [#27] at 2. The first matter involved Plaintiff's belief that Defendant BOCC was illegally misappropriating Building Department

---

[1] Plaintiff states in the Amended Complaint that he was 64 years old at the time of his termination. *See Am. Compl.* [#4] at 4.

[2] In the Amended Complaint [#4], Plaintiff alleges the following retaliatory actions by the County: refusal to give him an annual employee evaluation; delay in his pay increases; interference with his duties as a County Building Official; relocating him from a "relatively spacious office into a cramped cubicle that forced Plaintiff to crawl under his desk in order to sit at it;" changing his job description without notice; requiring him to violate County Building Code requirements and "citizen's rights" [sic]; prohibiting him from supervising Building Department staff; and excluding him from staff supervisor meetings. *Am. Compl.* [#4] at 4. With respect to Defendant Bellis, Plaintiff merely asserts that he "treated Plaintiff in a hostile manner toward the end of Plaintiff's employment, including sending Plaintiff hostile e-mails." *Id.* The parties do not submit competent summary judgment evidence supporting or opposing these particular allegations, however.

funds by using the funds in other County departments. *See Am. Compl.* [#4] at 3; *Response* [#27] at 7; *Reply* [#31] at 9-10. The second matter involved poor air quality in the County Road and Bridge building, in which Plaintiff worked starting in December 2008, that Plaintiff believed "possibly" violated requirements of the Occupational Safety and Health Administration. *See Am. Compl.* [#4] at 3-4; *Reply* [#31] at 10.

On July 29, 2009, Plaintiff was terminated by the BOCC, in a letter written by Defendant Bellis, for violating standards of conduct outlined in the Manual. *See Motion* [#18] at 3; *Ex. A to Motion* [#18-1] at 1; *Response & Ex. E to Response* [#27] at 2 & 16. Plaintiff believes that the reasons set forth in the termination letter were a pretext for age discrimination by Defendants and/or in retaliation for the exercise of his free speech rights pursuant to the First Amendment. *Am. Compl.* [#4] at 6; *Motion* [#18] at 3; *Response* [#27] at 2.

In addition, the second sentence of the letter read: "Effective immediately, you shall surrender any Archuleta County property in your possession and shall not be on County property." *Ex. F to Response* [#27] at 31. Plaintiff avers that this line permanently prevented him from entering any County property at any time for any reason, including to vote or to enjoy County park lands. *See Reply* [#27] at 9. He asserts that this violated, and continues to violate, his Fourteenth Amendment liberty interest and was further retaliation for the exercise of his free speech rights.

After his termination, Plaintiff filed a claim for unemployment benefits with the Colorado Department of Labor. *See Motion* [#18] at 3; *Response* [#27] at 2. He alleges that at the employment hearing held on September 30, 2009, Defendant Bellis "provided false testimony to support the denial of the Plaintiff's claim for benefits." *Am. Compl.* [#4]

at 5; *Motion* [#18] at 3; *Response* [#27] at 2.  The testimony about which Plaintiff complains

is Defendant Bellis's referral to statements in the termination letter as well Defendant

Bellis's statement that all relevant documents were provided to the Hearing Officer at the

employment hearing.  *See Response & Ex. H to Response* [#27] at 8-9, 51-52.  Plaintiff

avers that both the termination letter itself and statements made at the hearing violate his

Fourteenth Amendment liberty interest in his reputation.

Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Commission

("CCRC") on March 9, 2011.[3]  *See Ex. A to Response* [#27] at 12.  In the Charge, Plaintiff

stated:

> I have been employed since about July 2003 and most recently in the
> position of Building Inspector.  On or about June 29, 2009, I was discharged.
> As a result and in retaliation, I was banned from stepping foot on County
> property and was told that I would be trespassing if I did.  This violates my
> Constitutional Rights as I could not vote, serve on a jury and/or perform other
> related County processes.  I believe I have been discriminated and retaliated
> against because of my age, 66, in violation of the Age Discrimination in
> Employment Act, as amended.

*Id.*  On March 28, 2011, the United States Equal Employment Opportunity Commission

("EEOC") sent Plaintiff a Dismissal and Notice of Rights letter, informing Plaintiff that, "Your

charge was not timely filed with [the] EEOC; in other words, you waited too long after the

dates of the alleged discrimination to file your charge." *Ex. C to Response* [#27] at 14.  The

letter also advised Plaintiff of his right to file a lawsuit within ninety days of receipt of the

letter.  *See id.*  On June 28, 2011, Plaintiff filed this lawsuit.  *See Compl.* [#1].

## II.  Standard of Review

---

[3]  Plaintiff also states that he filed another Charge of Discrimination on June 28, 2011, but in support he provides only a copy of the FedEx shipment information and not a copy of the Charge itself.  *See Ex. B to Response* [#27] at 13.

-4-

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment should enter if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Response [#27] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A.    ADEA Claims: Age Discrimination and Retaliation

##### 1.    Exhaustion

Defendants argue that Plaintiff's first claim for relief, violation of the ADEA, is barred because Plaintiff failed to exhaust his administrative remedies.   Defendants argue that Plaintiff only filed a charge with the EEOC and neglected to file a charge of discrimination with the CCRC, even though he was required to do both. *See Motion* [#18] at 7-9.   Plaintiff claims that he filed a charge of discrimination with the CCRC on March 9, 2011, and not

with the EEOC as Defendants aver.

Defendants' argument is without merit. There is no dispute between the parties that Plaintiff filed a charge of discrimination with at least one of these agencies on March 9, 2011. First, the Charge of Discrimination Plaintiff signed on March 9, 2011 is subtitled "Colorado Civil Rights Division and EEOC." *Ex. E to Motion* [#18-5]. Second, immediately above Plaintiff's signature the form states, "I want this charge filed with both the EEOC and the State or local Agency, if any." *Id.* Third, "the worksharing agreement between the CCRD and the EEOC states that each agency designates the other as its agent for the purpose of receiving and drafting employment discrimination charges." *Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 813 (10th Cir. 2010) (internal quotations omitted). This means that "after each agency receives a discrimination charge, it is filed automatically with the other agency." *Id.* Thus, the fact that only the EEOC box is checked under the form heading "Charge Presented To:" does not indicate that only the EEOC received the charge, as Defendants assert. Plaintiff has therefore provided evidence that he filed a charge of discrimination with both the CCRC and the EEOC, Defendants' failure-to-exhaust argument lacks merit, and Defendants' motion should be denied on this ground.

**2.    Statute of Limitations**

Defendants argue that Plaintiff's first claim for relief, violation of the ADEA, is barred because Plaintiff failed to timely exhaust his administrative remedies.

A plaintiff must file a charge of discrimination with the EEOC before commencing a civil action pursuant to the ADEA. *See* 29 U.S.C. § 626(d)(1). As applicable to this matter, a charge must be filed "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B). Plaintiff was terminated on June 29, 2009, and he filed his charge

with the EEOC no earlier than March 9, 2011.  April 25, 2010 was the three-hundredth day after termination of Plaintiff's employment, nearly a year before Plaintiff filed his charge. The EEOC thus correctly found that Plaintiff's charge was not timely filed.  *Ex. G to Motion* [#18-7].

Plaintiff argues that his charge was timely filed because he is alleging an ongoing violation of his civil rights, since an "open-ended letter stating that a former employee cannot go onto County Property without an explanation or reason is beyond the termination process." *Response* [#27] at 4.  In support, Plaintiff cites to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  In that case, the Supreme Court held that discrete acts occurring outside of the 300-day filing period could be used to support a discriminatory hostile work environment claim when they involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 120-21. In other words, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

The Tenth Circuit has recently addressed *Morgan* in connection with the continuing violation doctrine as applied to Title VII and ADEA claims.  *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174 (10th Cir. 2011).  In *Almond*, the Court reiterated the rule espoused by the United States Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), which held that "whether the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later, the 'limitations period [ ] normally commence[s] when the employer's decision is made' and 'communicated' to the employee." *Almond*, 665 F.3d at 1177 (quoting *Ricks*, 449 U.S. at 258).  In other

words, "the 'proper focus' is on the time that the employee has notice of 'the *discriminatory* acts,' not 'the time at which the *consequences* of the act became most painful.'" *Almond*, 665 F.3d at 1177 (quoting *Ricks*, 449 U.S. at 258).  In this case, there is no dispute that Defendant BOCC communicated to Plaintiff that his employment was terminated on June 29, 2009.  Hence, the limitations period commenced on that day.

In *Almond*, the Tenth Circuit found that *Morgan* deviated from the general rule in *Ricks*, but that it drew "only a narrow distinction for hostile work environment claims." *Almond*, 665 F.3d at 1178.  *Morgan* reaffirmed the holding of *Ricks* by stating that "'[d]iscrete acts such as termination . . . ' trigger the statute of limitations when announced to the claimant, and do so whether or not all of their adverse effects or consequences are immediately felt." *Id.* (quoting *Morgan*, 536 U.S. at 114).  The Supreme Court distinguished hostile work environment claims from the general *Ricks* rule because such claims "'cannot be said to occur on any particular day,' and instead usually involve a pattern of acts that aren't 'actionable on [their] own' but give rise to a legal violation only when assessed in their totality." *Almond*, 665 F.3d at 1178 (quoting *Morgan*, 536 U.S. at 115-16).

Here, the Court does not construe Plaintiff's pleadings to allege a hostile work environment claim.  Even construing Plaintiff's pleadings liberally, his generic assertions that Defendant Bellis treated him in a hostile manner toward the end of his employment and sent him hostile e-mails fall far short of asserting a claim for age-based hostile work environment.  *See Phillips v. Moore*, 164 F. Supp. 2d 1245, 1254 (D. Kan. 2001) (holding that the plaintiff failed to state an age-based hostile work environment claim where the plaintiff's proffered evidence was "nothing more than a collection of unrelated and infrequent incidents of conduct by [the defendants] that [the plaintiff] subjectively

construe[d] as acts motived by age-related animus" and which was devoid of "the age-related comments or ridicule that are hallmarks of hostile work environment claims"). Thus, despite Plaintiff's averment that *Morgan*'s continuing violation doctrine saves his ADEA claim, "[b]y its own terms, then, *Morgan* helps [Plaintiff] in this case not at all. [He doesn't] seek to pursue a hostile work environment claim but wish[es] instead to challenge [Defendants'] termination . . . decision[ ]. And *Morgan* expressly held that those sorts of decisions remain subject to *Ricks*'s rule." *Almond*, 665 F.3d at 1178. Hence, the continuing violation doctrine does not apply in these circumstances.

Plaintiff alleges no act on the part of Defendants after his termination as conveyed to him through oral and written means. The alleged continuing repercussions of that act were that Plaintiff was unable to go onto county-owned land for any purpose. However, Plaintiff has failed to allege a single post-termination act by Defendants that could support a violation of the ADEA; hence, there is no factual basis to support Plaintiff's argument that his cause of action accrued later. There is no dispute that Plaintiff knew of every alleged act and effect as of the date of termination of his employment. In other words, Plaintiff's awareness of the need to assert his rights should have been triggered by the nature of the alleged discriminatory act—his termination and the conditions attached thereto. *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557-58 (10th Cir. 1994) (stating that a cause of action usually accrues pursuant to the ADEA "on the date the employee is notified of an adverse employment decision"). Plaintiff merely alleges that the consequences of a single discriminatory act (i.e., the termination letter) were ongoing. However, continuing consequences do not demonstrate a continuing violation, as the Court has discussed.

Accordingly, the Court finds that Plaintiff has failed to set forth facts creating a triable

issue on whether Defendants engaged in a continuing course of discrimination.  Therefore, because the Court finds that Plaintiff did not timely file his charge of discrimination with the EEOC, the Court recommends that summary judgment enter in favor of Defendants on Plaintiff's claim pursuant to the ADEA.

**B.    "Violation-of-manual" Claim**

Plaintiff's second claim is a somewhat incoherent combination of various state-law claims.  His Complaint alleges that "Defendants willfully violated the policies, procedures and express covenants of good faith and fair dealing" found in the Manual.  *Am. Compl.* [#4] at 7.  This allegation appears to make a claim for breach of an express employment contract.  In his Response, however, Plaintiff avers that he had an implied employment contract, stating, "[T]he implied employment contract in this case is based upon having employment and NOT having to engage in unlawful or unethical behavior." *Response* [#27] at 6.  Also in his Response, though, Plaintiff emphatically denies any breach-of-contract claim.  *See, e.g.*, *Response* [#27] at 6-7 ("Plaintiff did not file an employee contract claim;" "Plaintiff has not alleged an implied employment contract").  In fact, Plaintiff just as emphatically asserts that his employment was "at-will." *See id.* at 5-7.

The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  The thrust of Plaintiff's second claim, as augmented by his Response, appears to be three-fold: that he was tortiously discharged in violation of public policy; that Defendants

breached an express or implied employment contract; or that Plaintiff is entitled to recover based on promissory estoppel.  *See id.*

### 1.    Wrongful Discharge in Violation of Public Policy

Pursuant to Colorado law, at-will employment may be terminated by either party, "without cause and without notice," and without giving rise to a cause of action under most circumstances.  *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). However, "the terminability condition of an at-will employment contract . . . [is] unenforceable when violative of public policy."  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100,104-05 (Colo. 1992).  Discharge may thus be wrongful when it "contravenes a clear mandate of public policy."  *Id.* at 107.

To survive summary judgment on a claim for wrongful discharge in violation of public policy, a plaintiff must provide evidence of the following elements:(1) "the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege;" (2) "the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker;" (3) "the employee was terminated as the result of refusing to perform the act directed by the employer;" and (4) "the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as

a worker." *Id.* at 109.

Here, Plaintiff avers that he was terminated for "refusing to engage in unlawful or unethical behavior." *Response* [#27] at 6.  In support , he states first that he "had brought to the County's attention that certain policies ran counter to Colorado statutes, specifically that funding violations appeared to be taking place." *Id.* at 7.  Plaintiff expands upon this statement in his Amended Complaint:

> During the course of his employment, Plaintiff became aware that, or in good-faith believed that, the Archuleta County administration was using Building Department funds in other County departments.  The Building Department was funded by building permit fees, and not tax dollars.  Revenue generated from the building permit fees were [sic] to be spent only within the Building Department.  Plaintiff understood that this misappropriation of funds and tax dollars was a violation of Colorado statutes.

*Am. Compl.* [#4] at 3.  Plaintiff further states that he thought the poor air quality in the building where he worked could "possibly" violate OSHA standards and that he conveyed this to Greg Schulte, the Archuleta County Administrator.  *Id.* at 3-4.

Plaintiff does not provide competent summary judgment evidence supporting these allegations.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (stating that conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence).[4]  Regardless, even if he had, he still fails to raise a genuine dispute of material fact regarding his claim for wrongful discharge in violation of

_____

[4]  Fed. R. Civ. P. 56(e) allows a complaint to be treated as an affidavit if it is based on personal knowledge and has been sworn to under penalty of perjury.  That is not the case here.  Plaintiff's Amended Complaint is not verified. It is not the Court's function to search the complaint for evidence that rebuts Defendants' statement of undisputed facts. *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).  Because Plaintiff did not submit his Amended Complaint sworn under penalty of perjury, it cannot be considered as an affidavit for Rule 56 purposes. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997).  Therefore, Plaintiff's unverified complaint is insufficient evidence under Rule 56.

public policy.  First, he presents no evidence of an act that his employer directed him to take or prohibited him from taking.  *See Martin Marietta Corp.*, 823 P.2d at109.  Second, he presents no evidence that a specific Colorado statute or express public policy was violated.  *See id.*  Third, he presents no evidence that he was terminated for refusing to perform an order given by his employer.  *See id.*  At best, Plaintiff theorizes that his complaints about alleged misuse of building permit fees and poor air quality in the workplace led to termination of his employment.  This kind of unsupported speculation fails to establish a triable claim for wrongful discharge in violation of public policy.  Proof that Plaintiff was directed to take illegal action but refused to do so, or proof that he was forbidden from exercising free speech, is necessary.  No such proof is provided here, aside from Plaintiff's conjecture.  Conclusory allegations are not sufficient to defeat summary judgment.  *See Larson v. United Air Lines*, No. 11-1313, 2012 WL 1959471, at *2-3 (10th Cir. June 1, 2012).  Plaintiff thus does not create a factual dispute regarding his claim for wrongful discharge in violation of public policy.  *See, e.g., Sample v. City of Sheridan*, No. 10-cv-01452-WJM-KLM, 2012 WL 1247223, at *7 (D. Colo. Apr. 13, 2012) (denying the defendant's motion for summary judgment on the plaintiff's claim for wrongful termination in violation of public policy only where the plaintiff provided sufficient evidence to create a genuine issue of material fact as to whether he was fired for complaining of alleged financial improprieties and age discrimination).

### 2.    Failure to Follow Employment Manual Guidelines

Pursuant to either ordinary contract principles or promissory estoppel, "[a]n employee originally hired under a contract terminable at will may be able to enforce the [provisions] in an employee manual."  *Keenan*, 731 P.2d at 711-12.

### a.    Breach of Express or Implied Contract

Despite Plaintiff's statement that he does not claim that he had an employment contract with Defendant BOCC, his claim that Defendants failed to properly follow the provisions of the Manual is in essence a claim for breach of express or implied contract. *See Sample*, 2012 WL 1247223, at *10.  Pursuant to Colorado law, the elements for breach of express contract are: (1) existence of a contract; (2) performance by the plaintiff (or justification for nonperformance); (3) failure of the defendant to perform the contract; and (4) damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). With respect to an implied contract, "an employer may be held liable for the discharge of an otherwise at-will employee . . . where an implied contract arises out of company policy or employment manuals, or where an employee relies on the policies and manuals to his detriment." *Sample*, 2012 WL 1247223, at *10 (internal quotations and citations omitted). In that situation, pursuant to ordinary contract principles, a plaintiff must prove that the employer and employee used the employee manual as part of the bargain for employment made between them, by producing evidence of two elements: (1) "in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain" and (2) "his initial or continued employment constituted acceptance of and consideration for those procedures." *Id.* at 711.

Generally, the existence of an implied contract is a question left to the trier-of-fact; however, the issue may be decided as a matter of law in one of three circumstances: (1) the manual contains a valid disclaimer stating that the manual's policies are not intended

to create a contract; (2) the promises alleged are merely "vague assurances;" or (3) the undisputed facts "indicate[ ] that the employer did not intend the manual to operate as a contractual offer to the employee." *Sample*, 2012 WL 1247223, at *11 (citing *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994); *Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1522 (D. Colo. 1987)).

First, Plaintiff makes no showing whatsoever of an express employment contract between himself and his former employer.  He has provided no evidence of such a document, aside from the Manual.  As noted above, the Manual may be the basis for an *implied* contract claim.  Hence, entry of summary judgment in favor of Defendants is appropriate on any claim for breach of express employment contract.

Second, regarding a claim for breach of implied employment contract, the Manual specifically states in at least three locations that the handbook does not create a contract. *See Ex. B to Motion* [#18-2] at 5, 7, 11.  For example, the Manual reads:

> **ARCHULETA COUNTY IS AN "AT-WILL" EMPLOYER.**  Therefore, **THE CONTENTS OF THIS MANUAL AND STATEMENTS MADE BY COUNTY OFFICIALS AND OTHER EMPLOYEES SHALL NOT CREATE A PROPERTY RIGHT OR EMPLOYMENT CONTRACT BETWEEN THE COUNTY AND EMPLOYEES. NEITHER THIS MANUAL NOR ANY OTHER COUNTY DOCUMENT, CONFERS ANY CONTRACTUAL RIGHT, EITHER EXPRESSED OR IMPLIED, TO REMAIN IN THE COUNTY'S EMPLOY. NOR DOES IT GUARANTEE ANY FIXED TERMS AND CONDITIONS OF EMPLOYMENT.**

*Ex. B to Motion* [#18-2] at 5 (emphasis in original).  *See also id.* at 7 (reiterating in bold, capitalized language that employment is at-will and that no contract exists); *id.* at 11 (same).  The language in all three noted locations is printed in bold and capitalized text, clearly highlighted in comparison to the language on the rest of those pages.  *See id.*  In addition, Plaintiff has not submitted evidence that Defendants considered the Manual to be

an implied contract, and the language cited above leads to the opposite conclusion. Accordingly, Plaintiff's claim for failure to follow the Manual's guidelines fails because the evidence does not support a finding that the Manual created an implied contract. *See Sample*, 2012 WL 1247223, at *11 (citing cases denying similar claims "where the employer clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees").

### b.   Promissory Estoppel

In support of his claim for promissory estoppel, Plaintiff argues that Defendants failed to provide progressive discipline and thus failed to follow proper disciplinary procedures as provided in the Performance Counseling section of the Manual.

Pursuant to promissory estoppel, a plaintiff may be able to enforce the termination procedures of an employee manual if he provides evidence of three elements: (1) "the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures," (2) the employee reasonably relied on the termination procedures to his detriment," and (3) "injustice can be avoided only by enforcement of the termination procedures." *Keenan*, 731 P.2d at 712.

The Performance Counseling section of the Manual provides for five levels of sanctions that may be applied to an employee who commits policy infractions that are "generally unacceptable but not severe enough to warrant immediate termination." *Ex. B to Motion* [#18-2] at 12.   The five sanctions include an initial verbal advisory, a written advisory, suspension, demotion, and, finally, termination. *See id.* However, the Manual clearly states in multiple places that an employee may be terminated without following the

steps as outlined in the Performance Counseling section. *Id.* at 11-12 (stating that "some policy infractions by their very nature are serious enough to warrant termination without prior warning;" "[t]he County may initiate whatever form of corrective action it deems appropriate and necessary, in its judgment, based on the seriousness of the issue;" "[s]erious performance management measures may be taken without exhausting less serious measures depending on the circumstances;" and the County "may terminate an employee immediately for any reason, without performance counseling").

Because the Manual clearly and explicitly states that Defendants need not proceed through all of the steps of performance counseling and may proceed directly to termination, there is no genuine issue of material fact that procedural requirements were not met with respect to Plaintiff's termination. Accordingly, Plaintiff's claim of promissory estoppel based on Defendants' failure to follow the Manual's guidelines fails as a matter of law. *See Sample*, 2012 WL 1247223, at *12 (holding that a promissory estoppel claim failed where the plaintiff provided no evidence that the employer defendant did not follow the employment manual's requirements).

## C.   Section 1983 Claims

Plaintiff brings three constitutional claims pursuant to Section 1983 against Defendant Bellis only. First, he alleges that his First Amendment right to free speech was violated because Defendant Bellis retaliated against Plaintiff "for speaking out on matters of public concern" while he was employed by Defendant BOCC. *Motion* [#18] at 16; *Response* [#27] at 8. Second, he alleges that his Fourteenth Amendment liberty interest was violated in connection with termination of his employment by Defendant Bellis on June 29, 2009. *See id.* Third, he alleges that his Fourteenth Amendment liberty interest was

violated in connection with allegedly false testimony and other evidence provided by Defendant Bellis at Plaintiff's unemployment hearing on September 30, 2009.  *See id.*

## 1.    Statute of Limitations

Defendant Bellis first argues that Plaintiff's first two section 1983 claims fail because Plaintiff filed this lawsuit outside of the time period allowed by the applicable statute of limitations.[5]

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitations period of the state in which the action arose.  *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Hunt v. Bennett*, 17 F.3d 1263, 1265-66 (10th Cir. 1994).  In Colorado, a two-year statute of limitations applies.  *See* Colo. Rev. Stat. § 13-80-102(1)(g), (i) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statue" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).

By contrast, federal law rather than state law determines when a cause of action accrues.  *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968-69 (10th Cir. 1994).  Claims brought pursuant to section 1983 "accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of [the] action."  *Hunt*, 17 F.3d at 1266 (quoting *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)).

---

[5]  This argument appears to be based on the misconception that Plaintiff filed this lawsuit on July 15, 2011, which was the date the Amended Complaint was filed.  *See Motion* [#18] at 18; *Reply* [#31] at 7.  Regardless, the Court briefly addresses the statute-of-limitations argument.

Plaintiff initiated this lawsuit on June 28, 2011 [#1].  Because Plaintiff was terminated on June 29, 2009, his causes of action accrued on that date, and the claims arising from his termination were timely filed less than two years later.  *See also Motion* [#18] at 18 (stating Defendant Bellis's agreement that Plaintiff "was required to file these claims by June 29, 2011, which was two years after his termination").  Accordingly, Defendant Bellis's argument on this point is without merit.

### 2.    Free Speech Claim

Plaintiff alleges that he complained to his employer that certain building permit fees were being misappropriated by the County, in violation of unspecified state statutes, and that he complained to his employer about an unsafe working environment based on poor air quality.  *See Am. Compl.* [#4] at 3-4.  Based on these two complaints, he asserts that he was terminated in violation of his First Amendment right to free speech.

A free speech claim based on an employer's retaliation must be analyzed pursuant to the *Garcetti/Pickering* test.  *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-02 (10th Cir. 2009).

> First, the court must determine whether the employee speaks pursuant to his official duties.  If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1244-45 (10th Cir. 2009) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1202-03 (10th Cir. 2007)).  In addition, "[i]mplicit in the [*Garcetti*/] *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee." *Id.* (quoting *Belcher v. City of McAlester, Okla.*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003)).

In supporting a claim for First Amendment retaliation, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; [the] plaintiff[ ] must, rather, allege specific facts showing retaliation because of the exercise of the [plaintiff's] constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).  Plaintiff has failed to make specific allegations regarding the first three elements of his claim.

First, there is no evidence before the Court with respect to whether misuse of building funds or building air quality were concerns of Plaintiff pursuant to his official duties. Common sense dictates that the two subjects on which Plaintiff allegedly spoke out – use of money within the building department and an alleged unsafe working condition – may well have been related to Plaintiff's official duties.  Regardless, it is Plaintiff's burden to show that he was not speaking pursuant to those duties, and he has failed to make such a showing. *See Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1104 (D.N.M. 2011) (stating that the plaintiff is responsible for providing evidence demonstrating "that the substance of the speech which forms the basis for the First Amendment claim involves something that is not part of the plaintiff's official duties and is a matter of public concern, and not merely a complaint involving the plaintiff's own employment" (citing *Brammer-Hoelter*, 492 F.3d at 1202)).  Plaintiff therefore fails to meet the first element of the test.  *See Couch*, 587 F.3d

at 1244-45.

Assuming, *arguendo*, that Plaintiff was speaking as a private citizen and, further, that the speech was a matter of public concern as alleged (though not properly supported) by Plaintiff, the Court further finds that Plaintiff has failed to provide any evidence establishing that his commentary on the two issues outweighed the interest of the County as his employer. Indeed, Plaintiff has made no showing of the level of his interest in this speech, because he has not explained how the alleged diversion of fees and poor air quality impacted him, other employees, or members of the public. *See id.*; *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998) (stating that the nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded).

Further, with respect to the fourth element, Plaintiff has not provided evidence that his speech was a substantial or motivating factor in his termination.[6] *See id.* To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). Regarding this issue, Plaintiff alleges that some time after July 2008 he complained to Defendant Bellis about the appropriation of building funds and that some time after December of 2008 he complained about the building air quality. *See Am. Compl.* [#4] at 3-4. However, he does not provide allegations or evidentiary support to inform the Court of the temporal proximity of this speech to his June 29, 2009 termination. *See Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005)

---

[6] The parties do not dispute that termination of employment provides a sufficient basis for the Court to find that an "adverse employment action" occurred. *See Couch*, 587 F.3d at 1244-45.

("Although protected conduct closely followed by adverse action may justify an inference of retaliatory motive, the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive.").

In addition, Defendant Bellis has provided evidence that alternate grounds for dismissal existed pursuant to the fifth element of the *Garcetti* test, i.e., that Defendants would have taken the same action against Plaintiff even in the absence of protected speech. *See Ex. F to Response* [#27] (stating in the termination letter, with supporting detail, that Plaintiff was terminated for providing false information; for misplacing legal documents that were under his control; for refusing to provide an inspection schedule; for failing to properly report hours worked; for failing to perform inspections and conduct reports accurately; for failing to research and recommend a model Energy Code; for failing to provide a recommendation with respect to a requested septic inspection; for failing to provide proper supervision, training, and monitoring of his staff; for failing to provide appropriate constituent services; and for causing an unreasonable risk of potential litigation based on some of the preceding issues). Plaintiff has failed to provide evidence contradicting these reasons, and thus he has not created an issue of fact that "but for" Defendant Bellis's alleged retaliatory motive, Plaintiff's employment would not have been terminated. *See Baca*, 398 F.3d at 1221; *Ex. A to Motion* [#18-1]. Therefore, Plaintiff's claim cannot survive. *See Couch*, 587 F.3d at 1244-45.

Based on the foregoing, entry of summary judgment in favor of Defendant Bellis is appropriate regarding Plaintiff's section 1983 claim for freedom of speech pursuant to the First Amendment.

### 3.    Liberty Interest Claim: Use of County Property

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . . "  U.S. Const. amend. XIV, § 1.  The Court analyzes due process claims in two steps.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

Thus, Plaintiff must first establish that he was deprived of a constitutionally-protected liberty or property interest.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").  Plaintiff does not argue that he was deprived of a property interest.  *See Winegar v. Des Moines Indep. Comm. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994) (stating that a property interest is created by a source such as state law or a contract between the parties and is not constitutionally created).  Thus the Court examines whether Plaintiff had a liberty interest which was compromised.

Plaintiff claims that the termination letter foreclosed him from ever again entering County-owned property, and that this requirement violates his right of association, right to vote, and "right to enjoy public property as a law abiding citizen." *Response* [#27] at 9. The letter states in pertinent part that, "Effective immediately, you shall surrender any Archuleta County property in your possession and shall not be on County property." *Ex. F to Response* [#27] at 31.  Defendant Bellis, who wrote the termination letter, clarifies this directive in his affidavit by stating that, "Through this statement, I was directing [Plaintiff]

to turn in county property in his possession and advising that he was no longer authorized to remain in his prior work area." *Ex. H to Reply* [#31-1] at 1.  He also asserts that he "never told [Plaintiff] he was prohibited from setting foot on Archuleta County property again." *Id.* at 2.

Defendant Bellis's explanation of the meaning of the letter makes sense, but the wording of the letter is indeed unfortunate.  A reader eager to create legal issues over termination of his employment could easily interpret the letter to prohibit him from setting foot on County property in the future.  However, the poor wording of the letter alone is insufficient to create a genuine dispute about whether Plaintiff's due process rights were violated.  Plaintiff has neither alleged nor provided evidence that he has attempted to enter county property and has been prevented from doing so or that he was removed after doing so based on the language in his termination letter.  *See Reply* [#31] at 11.  Mere re-assertion of Plaintiff's unduly broad reading of the letter will not defeat summary judgment.  *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998) (stating that the nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded).

Based on the evidence before it, the Court finds that there is no genuine issue of material fact that Plaintiff was deprived of a liberty interest based on the termination letter's alleged requirement that he not enter County property.  *See, e.g.*, *Duran v. City of Monte Vista*, No. 10-cv-01728-WJM-MJW, 2012 WL 764458, at *7 (D. Colo. Mar. 8, 2012) (granting a motion for summary judgment on right-of-association liberty interest claim where the plaintiff provided no evidence countering the defendants' evidence that they had not engaged in any activity to interfere with her familial right of association).

### 4.      Liberty Interest Claim: Reputation

Based on the statements made at the time of his termination on June 19, 2009 and

based on  alleged false testimony provided by Defendant Bellis at Plaintiff's unemployment

hearing on September 30, 2009, Plaintiff claims that his due-process liberty interest was

violated.

"A liberty interest is implicated where the terms of the dismissal involve charges of

a damaging character that would jeopardize a person's reputation because such charges

can create a near-inescapable stigma, depriving the employee of future employment

opportunities." *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 959 (S.D. Iowa

Nov. 22, 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573-74 (1972)).

In short, "[t]he liberty interest that due process protects includes the individual's freedom

to earn a living." *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984).

Although Plaintiff has a liberty interest in his reputation as it affects his employment,

he must demonstrate how the government employer infringed on this interest. *See*

*Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (citing *Paul v. Davis*, 424 U.S. 693,

701 (1976)).  To do so, Plaintiff must provide evidence of four elements: (1) "the statements

must impugn the good name, reputation, honor, or integrity of the employee;" (2) "the

statements must be false;" (3) "the statements must occur in the course of terminating the

employee or must foreclose other employment opportunities;" and (4) "the statements must

be published." *Id.* (citations omitted).

In the Amended Complaint, Plaintiff asserted that Defendant Bellis "provided false

testimony to support the denial of the Plaintiff's claim for benefits." *See Am. Compl.* [#4]

at 5.  In support, he cites generally to the Letter of Termination, without citing to any

specific section of the document, and to short excerpts of Defendant Bellis's testimony at the employment hearing.  *See Response* [#27] at 9.

Plaintiff meets the first element of the test.  The letter describing the reasons for his termination states that he was released based on: (1) "altering or falsifying County records or reports;" (2) "insubordination—refusal to follow reasonable supervisory instruction or perform assigned tasks;" (3) "incompetent or unsatisfactory work performance as defined within the given job duties and/or other standards and expectations employed while working with customers and suppliers on behalf of the County;" and (4) "conduct that would bring serious discredit to the County, its reputation, its employees, customers, and/or its suppliers."  *Ex. F to Response* [#27] at 31, 33, 35, 37.  The letter also provides detailed subsections describing the facts supporting each of the four reasons for termination of Plaintiff's employment.  *See id.* at 31-39.  Such accusations clearly impugn the reputation and integrity of Plaintiff.  *See Harper v. Mancos Sch. Dist. Re-6*, No. 10-cv-01115-WJM-CBS, at *10 (D. Colo. Aug. 5, 2011) (finding that comments about the plaintiff's reputation and integrity that could foreclose future employment satisfied the first element of the liberty interest test).

Turning to the second element, Plaintiff strenuously asserts that the statements made by Defendant Bellis in the termination letter and at the employment hearing were false.  He avers that Defendant Bellis has provided no evidence to substantiate any of the allegations made against him.  *See Response* [#27] at 8.  In part, Plaintiff bases this assertion on Defendant Bellis' alleged failure to provide all documents to the Colorado Department of Labor Hearing Officer in connection with his employment hearing.  *See id.* Plaintiff, however, provides no evidence contrary to the allegations made in the termination

letter or to any statements made at the hearing.  Rather, he merely asserts that he "disputes the allegations of misconduct outlined by the defendants in the termination letter." *Id.*; *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998) (stating that the nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded). The Court therefore finds that Plaintiff has not met the second element by providing evidence which creates a genuine issue of material fact that the statements made were false. *See Harper*, 2011 WL 3426211, at *10 (finding a genuine issue of material fact only where the plaintiff provided evidence on which a reasonable juror could conclude that the statements made were false).  Mere assertions of false statements which impugn an individual's reputation are insufficient, standing alone, to create a triable issue regarding a Fourteenth Amendment liberty interest claim.  *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (holding that "defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest" (citations omitted)).

Accordingly, the Court finds that entry of summary judgment in favor of Defendant Bellis is appropriate on Plaintiff's section 1983 liberty-interest claim.

## IV.  Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment [#18] be **GRANTED**.

The Court FURTHER **RECOMMENDS** that judgment enter in favor of Defendants on all claims.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 4, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge